In the Matter of IRVING ADLER et al., Petitioners, against LEWIS A. WILSON, as Commissioner of Education of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, April 16, 1953.

*Harold I. Cammer* for petitioners.

*Charles A. Brind, Jr.,* and *John P. Jehu* for Lewis A. Wilson, as Commissioner of Education, respondent.

*Denis M. Hurley, Corporation Counsel (Michael A. Castaldi* and *Arthur H. Kahn* of counsel), for Board of Education of the City of New York and another, respondents.

TAYLOR, J. On the 6th day of December, 1951, upon the recommendation of the respondent superintendent of schools, the respondent board of education, for convenience hereinafter referred to as the Superintendent and the Board respectively, adopted ex parte what it described as " findings of fact and declaration of policy concerning Communist Party.'"[1] The peti-

---

[1] The pertinent provisions are as follows: " The conclusion is now inescapable that the Communist Party in the United States is and has been dedicated to the advocacy of the overthrow of our government by force and violence. Based upon such conclusion, it is the announced policy of the Board of Education that a teacher or other employee who is a member of the Communist Party or of a group advocating the overthrow of the government by force and violence is not qualified to continue in the school system. Past membership in the Communist Party, or in a group advocating the overthrow of the

tioners have been employed as teachers by the Board for tenures ranging from fifteen years to twenty-four years. Immediately after the adoption of the declaration of policy and between December, 1951, and February, 1952, the superintendent directed each of them to report to his authorized representative who was stated to be engaged in conducting a preliminary inquiry to determine whether certain employees of the Board were or had been engaged in subversive activities. They were advised that they might be accompanied by a teacher adviser if they chose. The subject of inquiry of each was whether he or she was or had been a member of the Communist party. Five of the petitioners declined to answer either of the component parts of a question propounded to elicit that information on the ground that it violated their constitutional and statutory rights. One denied present membership but refused to answer that part which related to past membership. Their refusals to submit to the inquiry have subjected them to disciplinary action.

The petitioners by respective appeals to the respondent Commissioner of Education, hereinafter referred to as the Commissioner, pursuant to section 310 of the Education Law sought

Government by force and violence may establish present membership in the absence of a showing that such membership has been terminated in good faith. Even if it does not so establish present membership, past membership may be taken into account with other circumstances of the individual case in considering whether a teacher or other employee is disqualified. Entirely relevant to a teacher's fitness for continued employment is the question of whether or not that teacher is now or has ever engaged in an illegal act or conspiracy. Where substantial reason exists to believe that a teacher is or has engaged in such activity, it is the duty of the Superintendent and, at his directive, any person in the employ of the Board of Education, to inquire as to such participation and the extent thereof. Similarly, it is the duty of the teacher who may be the subject of such inquiry to make full and fair disclosure of the facts. Any failure or refusal on the part of the teacher to reveal the facts must be regarded as an act of insubordination and conduct unbecoming a teacher, subjecting such teacher to disciplinary proceedings as provided by Law." The declaration of policy then stated that the Board took official notice of certain facts and events consisting of Federal and State statutes including chapter 360 of the Laws of 1949, commonly known as the Feinberg Law, judicial and administrative decisions, findings of a legislative committee, its own expressions and actions and a resolution of the National Education Association. It continued: "The findings of this Board, herein contained, are made without prejudice to the rights of any teacher who may be accused of subversive activity, and are not intended to impair any safeguards available to such teacher by reason of any rule, statute or law. Such accused teacher may, during all stages of any proceeding in which he may be involved, controvert the evidence offered of his membership in the Communist Party or any other subversive group with knowledge of the illegal aims and purposes of such party or group."

to restrain the Superintendent from asking the question and to void and annul the declaration of policy. They contended that the inquiry abridged their constitutional and statutory rights and attempted administrative action in a field appropriated to the Board of Regents by the Feinberg Law.[2]

The Commissioner rendered a series of uniform decisions which dismissed their appeals on the merits. In this proceeding instituted pursuant to article 78 of the Civil Practice Act the petitioners seek to review and void as arbitrary, capricious and contrary to law those decisions.

The constitutionality of inquiries relating to present or past membership in the Communist party in its relation to fitness and suitability for employment in the public service has been recently considered by the United States Supreme Court. (*Garner* v. *Los Angeles Board,* 341 U. S. 716.) There an ordinance of the City of Los Angeles required every employee to execute an affidavit '' stating whether or not he is or ever was a member of the Communist Party of the United States of America or of the Communist Political Association, and if he is or was such a member, stating the dates when he became, and the periods during which he was, such a member ''. The court disposed of the constitutional attack by several employees of the city who refused to execute the affidavit in these words: '' The affidavit raises the issue whether the City of Los Angeles is constitutionally forbidden to require that its employees disclose their past or present membership in the Communist Party or the Communist Political Association. * * * We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment. The affidavit requirement is valid.'' (P. 720.) Mr. Justice FRANKFURTER joined the majority of the court in upholding the validity of the affidavit requirement with the following comment: '' A municipality like Los Angeles ought to be allowed adequate scope in seeking to elicit information about its employees and from them. It would give to the Due Process Clause an unwar-

---

[2] U. S. Const., art. VI; U. S. Const., 1st, 9th, 10th & 14th Amendts.; N. Y. Const., arts. I & XIII; L. 1949, ch. 360; Civil Service Law, §§ 25, 26-a.

ranted power of intrusion into local affairs to hold that a city may not require its employees to disclose whether they have been members of the Communist Party or the Communist Political Association. In the context of our time, such membership is sufficiently relevant to effective and dependable government, and to the confidence of the electorate in its government. I think the precise Madison would have been surprised even to hear it suggested that the requirement of this affidavit was an ' Attainder ' under Art. I, § 10, of the Constitution. For reasons outlined in the concurring opinion in *United States* v. *Lovett* (328 U. S. 303, 318), I cannot so regard it. This kind of inquiry into political affiliation may in the long run do more harm than good. But the two employees who were dismissed solely because they refused to file an affidavit stating whether or when they had been members of the Communist Party or the Communist Political Association cannot successfully appeal to the Constitution of the United States." (Pp. 725–726.)

The petitioners urge that *Wieman* v. *Updegraff* (344 U. S. 183) has limited the scope of the *Garner* decision. In the *Wieman* case an Oklahoma statute required all State officers and employees, including the faculty and staff of a State college, to forswear, within the thirty days permitted by the act, that they were affiliated directly or indirectly with any organization or party " which has been officially determined by the United States Attorney General or other authorized public agency of the United States to be a communist front or subversive organization " and that they had been so affiliated within the preceding five years. The oath was held to offend due process as an assertion of arbitrary power since the fact of association alone determined disloyalty and disqualification with no discrimination between innocent and knowing affiliation. The court pointed out that in determining the constitutionality of the oath which was construed in the *Garner* case, against which a similar attack had been made, there was justification to assume that *scienter* was implicit in each of its clauses. The affidavit provisions of the Los Angeles ordinance which, as here, required employees to state whether and when they were or had been members of the Communist party were not involved.[3] Asking the subject question violated none of the petitioners' constitutional guarantees.

---

[3] "Petitioners have assumed that the oath and affidavit provisions of the ordinance present similar constitutional considerations and stand or fall together. We think, however, that separate disposition is indicated." (*Garner* v. *Los Angeles Board*, 341 U. S. 716, 720.)

Sections 25 and 26-a of the Civil Service Law did not forbid the Board's inquiry into Communist party affiliation.[4] In *Matter of Rabouine* v. *McNamara* (301 N. Y. 785 [1950] the New York City civil service commission removed Rabouine's name from the list of eligibles in the police department where he was serving as a patrolman in a probationary capacity and discharged him on the ground that it was not satisfied with his character or reputation for the reason that in 1945 he had signed a petition for the nomination for public office of a candidate of the Communist party and in 1946 had been a member of that party for a period of about three to five months. Upon his administrative hearing he was asked whether he had been a member of the Communist party. He admitted past but denied present membership. In a proceeding instituted pursuant to article 78 of the Civil Practice Act to review the action of the commission and to compel the restoration of his name to the list and his reinstatement to the position, which was transferred to the Appellate Division in the second department for determination, the action of the administrative body was not disturbed. (275 App. Div. 1052.) On his appeal to the Court of Appeals the appellant unsuccessfully urged that section 26-a *(supra)* forbade the asking of the question concerning his membership in the Communist party. The decision is equally applicable to section 25 *(supra)*. The petitioners had no greater statutory immunity from inquiry as to political affiliation with the Communist party than had the probationary policeman.

The petitioners challenge the Commissioner's determination that " there is no provision contained in the so-called Feinberg Law or in the Rules of the Board of Regents which would prevent the Board of Education of the City of New York from independently establishing a list of its own of organizations which advocate the overthrow of the Government by force, or from questioning any teacher as to his or her membership in any organization which it suspects is in such category." They argue that the Feinberg Law provides the exclusive procedures

[4] Section 25 of the Civil Service Law, in part, provides: "No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of the rules established as aforesaid, shall be in any manner affected or influenced by such opinions or affiliations."

The pertinent provisions of section 26-a are as follows: "No person shall directly or indirectly ask * * * the political affiliations of any employee in the civil service of the state or of any civil division * * * thereof * * * as a test of fitness for holding office."

for eliminating members of subversive organizations from employment in the public schools of the State. With that thesis as a springboard they undertake to expand the issues which were before the Commissioner to include a frontal attack on those provisions of the declaration of policy which they contend proscribe the Communist party as a subversive organization without notice and an opportunity to be heard and disqualify its members from employment in the school system. They may not be heard to complain that the Board's action maimed the Communist party which they do not pretend to represent in any capacity. (*Thompson* v. *Wallin,* 276 App. Div. 463, 466.) Nor was there before the Commissioner the question whether the Board may determine under its declaration of policy than its employees' disclosure of present or past affiliation with the proscribed organization would justify the termination of their employment. The petitioners were not suspended or threatened with departmental disciplinary action because of admitted or charged membership in the Communist party. The petitioner Adler made that clear in the affidavit which he filed with the Commissioner upon the application for a stay of disciplinary proceedings.[5] The scope of this proceeding is restricted to a judicial review of the Commissioner's determinations within the ambit of the controversies which their appeals presented. (Civ. Prac. Act, § 1296.) I find nothing in the Feinberg Law or the rules of the Board of Regents which is at variance with the interpretation which the Commissioner has given them.

---

[5] The pertinent provisions are as follows: "It must be emphasized (and it is not disputed) that these suspensions and charges, and the threat of more suspensions and charges, are based solely upon refusal to answer questions propounded under the Statement of Policy. No charges have been made that any of the eight suspended teachers, who average almost twenty years of service, have rendered other than outstanding service or have been guilty of the slightest misconduct in the performance of their duties. Nor do the charges allege or imply that any of them are in fact members of a proscribed organization or that they did ever or do now advocate unlawful (or any other) overthrow of the government. Respondents' employment of this 'insubordination' device places teachers in an impossible and unfair dilemma in which they should not be placed unless and until the legal issues are clarified  *  *  *. Again, I must state that no charges of membership or advocacy are involved.  *  *  *  Bearing in mind that no allegations of membership, past or present, are involved but only the issue of insubordination, the respondents should be enjoined from effecting the Statement of Policy particularly as respects the suspension or disciplinary action against teachers who fail and have failed to answer questions promulgated thereunder until such time as the procedures under the Feinberg Law are utilized so that teachers may be informed of their obligations under the statute."

The decisions of the Commissioner were not arbitrary, capricious or contrary to law. It follows that the petition must be dismissed on the merits and the interim stay granted herein vacated, without costs.

Submit order.